Jon B. Fougner (State Bar No. 314097)
jon@fougnerlaw.com
600 California Street, 11th Floor
San Francisco, California 94108
Telephone: (415) 577-5829
Facsimile: (206) 338-0783

[Additional counsel appear on signature page]

*Attorneys for Plaintiff Dr. Sarbjit Dhesi and the*
*Proposed Class*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| DR. SARBJIT DHESI, individually and on behalf of all others similarly situated, | NO. |
| Plaintiff, | **COMPLAINT FOR INJUNCTION AND DAMAGES** |
| v. | |
| XPRESSION OF AWARENESS, INC., d/b/a "RETHINK CBD," a/k/a "CBD RETHINK," | **DEMAND FOR JURY TRIAL** |
| | **CLASS ACTION** |
| Defendant. | |

Plaintiff Dr. Sarbjit Dhesi, by his undersigned counsel, for this class action complaint against Defendant Xpression of Awareness, Inc., d/b/a "ReThink CBD," a/k/a "CBD ReThink," and its present, former, and future direct and indirect parent companies, subsidiaries, affiliates, agents, and other related entities, alleges as follows:

## I.    INTRODUCTION

1. <u>Nature of Action</u>.  Plaintiff, individually and as proposed class representative for all others similarly situated, brings this action against Defendant for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

## II.    PARTIES

2. Plaintiff is a natural person residing in this District.

3. Defendant is a for-profit corporation.

- 1 -

4.   Defendant is incorporated under the laws of Florida.

5.   Defendant's principal place of business in Miami, Florida.

6.   Defendant has informed the Florida Department of State that its principal address is 11231 NW 20 Street, Unit 140-195, Miami, Florida 33172.

7.   Defendant has informed the Florida Department of State that its CEO is Hamid Mchatet of 4958 SW 168th Avenue, Miramar, Florida 33027.

8.   Defendant's CEO is Hamid Mchatet of 4958 SW 168th Avenue, Miramar, Florida 33027.

9.   Defendant does business in California and throughout the United States.

### III.   JURISDICTION AND VENUE

10. Jurisdiction.  This Court has subject matter jurisdiction over Plaintiff's claims under 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012).

11. Personal Jurisdiction.  This Court has personal jurisdiction over Defendant because a substantial part of the acts challenged in this complaint—namely, the delivery of the illegal advertisement—occurred in California, as was Defendant's intention.

12. Venue.  Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because Plaintiff resides in this District and a substantial part of the events giving rise to Plaintiff's claims—namely, the delivery of the illegal advertisement—occurred in this District.

13. Intradistrict Assignment. Assignment to this Division is proper pursuant to Local Rule 3-2(c)-(d) because a substantial part of the events that give rise to Plaintiff's claims—namely, the delivery of the illegal advertisement—occurred in San Ramon, in Contra Costa County.

### IV.   THE TELEPHONE CONSUMER PROTECTION ACT OF 1991, 47 U.S.C. § 227

14. In 1991, Congress enacted the TCPA in response to a growing number of complaints about telemarketing.

15. The TCPA forbids sending unsolicited advertisements for goods or services via facsimile ("Junk Faxes"). 47 U.S.C. § 227(b)(1)(C).

COMPL.
*Dr. Dhesi v. Xpression of Awareness, Inc.*

16. The TCPA requires that even those fax advertisements being sent to those who consented to their receipt, or with whom the advertiser has an established business relationship, include an opt-out notice ("Opt-Out Notice"). *Id.* § 227(b)(2)(D).

17. In order to comply with the TCPA's Opt-Out Notice requirements, each fax advertisement must include, *inter alia*, all of the following:

   a) clear and conspicuous language on the first page stating that recipients may request that the sender not send any unsolicited advertisements and informing recipients that failure to comply with such a request within 30 days is unlawful;

   b) a 24/7 phone number that the recipient may call to submit a request to cease transmitting fax advertisements to the recipient; and

   c) a 24/7 facsimile number to which a recipient may send a request to cease transmitting fax advertisements to the recipient.

47 U.S.C. § 227(b)(1)(C); 47 C.F.R. § 64.1200(a)(4)(iii)-(v).

12. The TCPA provides a private right of action to recipients of illegal fax advertisements. 47 U.S.C. § 227(b)(3).

## V.   FACTUAL ALLEGATIONS

### A.   Factual Allegations regarding Defendant and Its Spam Fax Campaign

18. Defendant's business is selling cannabis-based products that it claims treat pain.

19. Defendant's business model includes marketing through fax advertisements.

20. Recipients of Defendant's Junk Faxes, including Plaintiff, are health care professionals or entities through which such professionals practice that have never consented to receive them and that have no preexisting business relationship with Defendant.

21. Many of these recipients, including Plaintiff, are chiropractors.

22. When Defendant sends Junk Faxes to practitioners, its goal is to sell them cannabis-based products that it claims treat pain.

### B.   Factual Allegations regarding Plaintiff

23. Plaintiff is, and at all relevant times has been, a "person" as defined by 47 U.S.C. § 153(39).

24. On June 20, 2019, Defendant sent Plaintiff the fax that is reproduced on the last page of this complaint (after the signature block).

25. The fax announced the commercial availability of Defendant's goods.

26. The fax gives several indications that it was sent by Defendant. For example:

   a) It claims to be from "Rethink CBD."

   b) It lists a "cbdrethink.com" URL and email address.

   c) It has a "ReThink" logo.

27. The fax advertisement was unsolicited.

28. The fax described itself as a "fax broadcast."

29. The fax lacked a TCPA-compliant Opt-Out Notice. For instance, it lacked a fax number to which Plaintiff could send a do-not-fax request.

30. The fax was addressed to "Sarbjit Dhesi Dc Qme Daapm Frccm Actar."

31. The fact that the fax was address to a gibberish addressee indicates that a large number of such faxes were populated by a process akin to "mail merge," used for mass-mailing (here, mass-faxing).

32. Other than the addressee line, the capitalization of which appears to be the result of a "title-casing" software script operated at a mass scale without human review, the fax was 100% generic.

33. Plaintiff did not provide permission to Defendant to send him fax advertisements, or faxes at all.

34. Plaintiff has never been a customer of Defendant, nor has he ever been interested in being a customer of Defendant.

35. Plaintiff and all members of the Class, defined below, have been harmed by the acts of Defendant because their privacy has been violated, they were subjected to annoying and harassing faxes that constituted a nuisance, and their fax lines were interfered with.

## VI.    CLASS ACTION ALLEGATIONS

36. Class Definition.  Pursuant to Federal Rule of Civil Procedure 23(b)(2) and (b)(3), Plaintiff brings this case as a class action on behalf of a class (the "Class").

37. The Class is defined as follows:

> All persons and entities to whom: (a) Defendant and/or a third
> party acting on Defendant's behalf sent one or more faxes; (b)
> advertising Defendant's goods or services (d) at any time in the
> period that begins four years before the date of filing this
> complaint and ends at the date of trial.

38. <u>Exclusions</u>: Excluded from the Class are Defendant, any entity in which Defendant has a controlling interest or that has a controlling interest in Defendant, Defendant's legal representatives, assignees, and successors, the judges to whom this case is assigned and the immediate family members of all of the foregoing.

39. <u>Numerosity</u>.  The Class is so numerous that joinder of all members is impracticable. On information and belief, judging from the generic nature of the fax, the Class has more than 100 members.  It will be more efficient for the Court and the parties to resolve these alleged violations of the TCPA in one fell swoop than in hundreds or thousands of individual trials.

40. <u>Commonality</u>.  There are many questions of law and fact that have the same answer for all class members and the answers to which will be determinative of the outcome of the litigation. That is no surprise, given the generic nature and content of the fax. The common questions include:

> a.    Who sent the faxes?
>
> b.    Were the faxes sent in order to make sales?
>
> c.    Did the faxes contain a compliant Opt-Out Notice?
>
> d.    Did Defendant have a practice of obtaining consent before sending facsimile advertisements?
>
> e.    Where did Defendant get the list of phone numbers and addressees used for the "mail merge"?
>
> f.    Did the faxes violate the TCPA?
>
> g.    Were Defendant's violations knowing or willful, within the meaning of the TCPA?

h.    Should Defendant be enjoined from sending medical professionals unsolicited facsimile advertisements?

41. <u>Typicality</u>.  Plaintiff's claims are typical of the claims of the Class. Plaintiff's claims and the claims of the Class arise from identical or similar boilerplate faxes and are based on the same provisions of the TCPA.

42. <u>Adequacy</u>.  Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has retained competent and capable attorneys with significant experience in complex and class action litigation, including TCPA class actions. Plaintiff and his counsel are committed to prosecuting this action vigorously on behalf of the Class and have the financial resources to do so. The interests of Plaintiff and his counsel are aligned with those of the proposed Class.

43. <u>Predominance</u>.  Defendant has engaged in a telephonically routinized course of conduct toward Plaintiff and members of the Class. The common issues arising from this repetitive conduct that affect Plaintiff and members of the Class predominate over any individual issues.

44. <u>Superiority</u>.  A class action is the superior method for the fair and efficient adjudication of this controversy.  Classwide relief is essential to compel Defendant to comply with the TCPA. The interest of individual members of the Class in individually controlling the prosecution of separate claims against Defendant is small because the damages in an individual action for violation of the TCPA are small. Management of these claims is likely to present significantly fewer difficulties than are presented in many class actions because the faxes at issue are automated and because the TCPA articulates bright-line standards for liability and damages. Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants, and deters illegal activities.  There will be no significant difficulty in the management of this case as a class action.

45. <u>Injunctive and Declaratory Relief Is Appropriate</u>.  Defendant has acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class appropriate on a classwide basis.

## VII.    FIRST CLAIM FOR RELIEF
### (Violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227(b))
### On Behalf of Plaintiff and the Class

46. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

47. Defendant violated the TCPA, 47 U.S.C. § 227(b)(1)(C), by sending fax advertisements for its goods.

48. Plaintiff and members of the Class are entitled to an award of $500 in damages for each violation of the statute, which amount may be increased up to $1,500 for each willful or knowing violation. *Id.* § 227(b)(3).

49. Plaintiff and members of the Class are also entitled to, *id.* § 227(b)(3)(A), and do seek an injunction prohibiting Defendant and all other persons who are in active concert or participation with it from sending fax advertisements.

## VIII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on his own behalf and on behalf of all members of the Class, prays for judgment against Defendant as follows:

A.    Certification of the proposed Class;

B.    Appointment of Plaintiff as representative of the Class;

C.    Appointment of the undersigned counsel as counsel for the Class;

D.    A declaration that actions complained of herein by Defendant violate the TCPA;

E.    An order enjoining Defendant and all other persons who are in active concert or participation with it from sending fax advertisements;

F.    An award to Plaintiff and the Class of damages, as allowed by law;

G.    An award to Plaintiff and the Class of attorneys' fees and costs, to the extent allowed by law, equity and/or California Code of Civil Procedure section 1021.5;

H.    Leave to amend this Complaint to conform to the evidence presented at trial; and

I.    Orders granting such other and further relief as the Court deems necessary, just, and proper.

1

## IX.    DEMAND FOR JURY

2      Plaintiff demands a trial by jury for all issues so triable.

3

## X.    SIGNATURE ATTESTATION

4      The CM / ECF user filing this paper attests that concurrence in its filing has been

5  obtained from its other signatories.

6

7      RESPECTFULLY SUBMITTED on July 23, 2019.

8                                    By: */s/ Jon B. Fougner*
                                         Jon B. Fougner
9

10                                       Anthony I. Paronich
                                         anthony@paronichlaw.com
11                                       PARONICH LAW, P.C.
                                         350 Lincoln Street, Suite 2400
12                                       Hingham, Massachusetts 02043
                                         Telephone: (617) 485-0018
13                                       *Subject to Pro Hac Vice*

14
                                         Andrew W. Heidarpour
15                                       aheidarpour@hlfirm.com
                                         HEIDARPOUR LAW FIRM, PLLC
16                                       1300 Pennsylvania Avenue NW, 190-318
                                         Washington, District of Columbia 20004
17                                       Telephone: (202) 234-2727
                                         *Subject to Pro Hac Vice*
18

19

20

21

22

23

24

25

26

27

28

COMPL.
*Dr. Dhesi v. Xpression of Awareness, Inc.*

06-20-2019 12:03          305-592-7906                          1/1

Special Product Notice For

## CHIROPRACTIC and WELLNESS OFFICES

### ATTN: Sarbjit Dhesi Dc Qme Daapm Frccm Actar

ReThink CBD-Infused Topical products are a great alternative to OTC analgesics & opioids, providing relief from pain caused by inflammation.

ReThink CBD comes in pumps and roll-ons, and are applied directly to the skin to relieve achy muscles and joints. Help your patients ease their pain, and add new options to your treatments!



Made with All-Natural ingredients and Full Spectrum (whole plant) hemp extract which includes all the cannabinoids and phytonutrients naturally found in the plants.






## Naturally Grown | Made In The USA | Zero THC | Lab-Tested

Visit www.cbdrethink.com/Chiro or Call 786-961-3273 to learn about ReThink for Chiropractic offices.

Regards,
**Louis**

Louis Wing | louis@cbdrethink.com | Direct 786-961-3273

ReThink     ReThink CBD is a company that is interested in helping you provide safe, naturally grown products that are a great addition to your existing wellness supplements. ReThink CBD products are lab-tested and guaranteed, certificates of analysis are available for every product we make.

You can Opt-Out of this fax broadcast anytime by calling 1-855-210-6098

COMPL.
*Dr. Dhesi v. Xpression of Awareness, Inc.*